We will hear argument next in Effecten-Spiegel v. Merrill Lynch, 182473. Good morning, and may it please the Court. I am Ralph Stone for the appellants, the petitioners below, investors who lost money during the short squeeze in 2008 of VW's stock and who have lawsuits pending in Germany. This is an appeal from an order denying petitioners application for discovery in aid of a foreign litigant or proceeding under 28 U.S.C. § 1782. The District Court, in its analysis of § 1782, followed the template set forth in the landmark § 1782 case from the Supreme Court, Intel v. AMD, and quickly found that what was undisputed is that the mandatory factors were readily satisfied by the petitioners. They were litigants in a foreign proceeding who were seeking assistance in the form of taking discovery in the United States for use in connection with the foreign proceeding. The District Court then proceeded to conduct what is referred to as the discretionary analysis, or the review of the four discretionary factors set forth in Intel. So far, so good, right? No complaints yet. And about those Intel factors, they're not exclusive, are they? In other words, when you say the District Court proceeded to consider the exercise of discretion using the four Intel factors, is it not the case that the four Intel factors are exemplary rather than exclusive factors? I think that that's a fair statement, though the way the cases have played out with great consistency is that courts tend to use those four factors, and the vast majority of considerations that might seem to be outside the framework set by the Supreme Court can be fit into one of the seven total factors. Well, they can be fit into. One of the things that struck me in reading the District Court's pronouncements on this is that there were factors that the District Court considered that your argument is, well, that's not really what this particular Intel factor is about. And I was thinking, well, maybe, but isn't that an intelligent thing for a District Court to consider, whether it fits within that little cubbyhole, or fits the language of that Intel factor, or not? Like Intel factor number one, for example, are the documents, is the applicant or the subject a party to the foreign litigation? And you say, oh, the Intel factor is no, these people are not parties. But the judge looked at it closer and said, well, yeah, that's literally true, but the documents themselves are available from a party, and that's really the raison d'etre for the Intel number one factor. First off, all that Intel suggests is that even if the documents are available from a party, in fact, there's really no evidence that Portia has Merrill Lynch's documents, and there is no evidence that the state prosecutor in some state in Germany has the documents that are being requested by the petitioners. But nevertheless, the court is entitled to consider that, but that's not really something that should have weighed against us here. And that, I think, gets to the ultimate question that Your Honor was asking, is that Judge Cote put these points into the same discretionary factor analysis that the Supreme Court set forth, and in doing so, she was being able to look beyond, but then made a series of errors in doing so. And the errors, if you're going to win this, it seems to me what you'd have to persuade us of is not that in some technical way, this business of were the documents available from somebody in Germany, a proper part of Intel factor number one, what you've got to persuade us of is either, as you said, and it was error as a factual matter to conclude that this was so, or even if it is so, that whether it's Intel factor number one or an independent factor is not a factor that should be considered to weigh at least as heavily as the district court did against you. It's not clear with respect to the first factor how heavily it weighed. She didn't actually say that it weighed against us.  It seemed to neutralize . . . But isn't that the whole . . . I mean, this is a question of the district court's discretion. There are lots of things that go into it, and ultimately, the issue is, is it an abuse of the district court's discretion to say no, that given everything that's before me, this is not a good idea to do. I hate for this conversation to get hung up on the first factor because we rest . . . It's exemplary. I'm not hung up on the first factor either, but it seems to me that virtually everything you argue is in the framework of, well, this factor should count for us, and the things that the district court stuck under that factor don't really go there and don't really flip that factor the other way, when what I'm looking at is taking all of the facts that the district court . . . facts or alleged facts or non-facts that the district court considered, was this an abuse of discretion in the aggregate? I think in the aggregate, when you look at all of the factors, it does become an abuse of discretion. With respect to the first factor, there really was no factual basis for that kind of problem. In fact, the judge's analysis sort of flipped the question over and took some remarks from preliminary consultations, which preceded a trial that is still ongoing with hearing dates this month, next month, and into September, that the court decided that because of some preliminary remarks as to which there was serious factual dispute, she engaged in the speculative foray of trying to . . . What we should have had was a trial before the district court about these disputed facts? Just the opposite. We should have neutralized and not gotten involved in trying to weigh competing expert views about the significance of what are just preliminary consultations. What is the need for expert testimony? Is it not the case, is it not undisputedly the case, that the German court expressed some negative view of the plaintiff's case and as a consequence of that declined to request certain documents which are at least a part of or related to the discovery that is being sought here? Not really. There is a dispute about that. There is no dispute that there were what we could call negative remarks. But that really is a totally separate question from the declining to request documents. The negative remarks were in the context of a request that documentary . . . I wouldn't call it discovery. I don't think from everything I know about German procedure that that's what it is. But there was a request that the court get certain documents and the court said, no, I don't think that's really helpful. Right, but we don't know why. And we certainly don't know that it's because the court's preliminary consultations came to the conclusion that they were taking a negative view. What we do know is that . . . It didn't take a positive view, right? It didn't take a positive view. But at the end of the day, the plaintiffs were having a trial and this court or the district court could have assisted in the provision of discovery in aid of that trial. That trial is a huge trial with huge stakes. The document that was requested was essentially of documents that did not emanate from the United States. Whether they could have been obtained in the United States, the United States. I don't think that is necessarily the case. I don't have in the record evidence that supports that assertion. Do you have any evidence that it is likely that documents related to this transaction would have been prepared in the normal course of business or retained in the normal course of business by the United States Merrill Lynch entity? Merrill Lynch is a big enterprise. Merrill Lynch was the financier of Porsche. It also was an investment advisor or a transactional advisor. When you say it, the representation on the other side is that the it that was the investment banker in effect on this transaction was in Ireland. Or was organized under an Irish entity, but really I think they're talking about London. But there is no assertion that New York was not involved. They don't make that assertion at all. You have any evidence other than Mr. Thain's conversation as to which at least initially I think that's not an issue here. You were going to get a deposition of his. Is there any evidence that something happened in New York that you were able to present? Well, we have the Thain meeting, which leads to the general belief that New York was involved. In addition, there is a request for documents relating to the lending of VW shares, which was part of the transactional process associated with short selling. It is our assertion in our communications with Merrill Lynch's counsel, which Judge Securities was also centered in New York. So there is discovery potentially relating to that data, which is centered in New York because the inventory, as I understand it, and I don't have citations in the record, but just generally, is maintained in multiple locations because CalPERS might be the holder of a huge stake in VW shares and some Connecticut hedge fund wants to short it and through London even, but there's inventory data in New York. Those were the sorts of pieces of information that we conveyed in our communication with Merrill's counsel during the litigation in the lower court. You have reserved three minutes for rebuttal. We'll hear from the other side. Thank you. Good morning, Your Honors. Sue Honohan on behalf of Portia S.E. Judge, you asked the question whether the intel factors are non-exclusive and that is absolutely correct. This Court already noted in the Keogh-Bell case versus Cravath, Swain and Moore, 895 F. 3rd 238, that the Supreme Court made clear that such intel factors are non-exclusive. In fact, in that same Keogh-Bell case, this Court also made clear that the intel factors are not to be applied mechanically. A district court should also take into account, quote, any other pertinent issues arising from the facts of a particular dispute. So, Your Honor . . . Is there a case like this from our circuit where we have opined on the issue of . . . it's a veil piercing issue of using a 1782 proceeding to . . . and this is what I think Judge Cote was concerned about . . . to ask a U.S.-based corporate parent for documents that may be in the possession of a subsidiary or affiliated company abroad? Your Honor, my colleague here, Ms. Buchwald, will address that specific question, but when she gets up, she will certainly talk about instances where that scenario was presented. In the Second Circuit? Yes. Okay. That is a very relevant factor that Judge Cote, below, did take into account as part of a flexible framework that the Supreme Court had set up. I would like to address some specific points that my colleague here made with respect to . . . Before you go on to that, let me ask you this. Obviously, intel factors are not exclusive. To be considered, other things may be considered, but what if you have a situation where applying the intel factors, literally, three or four out of the four all point towards discovery, literally, mechanically? Can you still take into account other considerations that essentially render them irrelevant? I think it's going to depend on the particular circumstances, Your Honor, and I imagine there much weighing may result there, but what happened here is even applying just the four intel factors laid out in the Supreme Court decision, Judge Cote still held that on balance that those factors did weigh against granting Section 1782 discovery. Going back to the first factor, as Your Honor had noted, Judge Cote did acknowledge the fact that the Merrill Lynch respondents were located in New York, but that's not the entirety of what Intel Factor 1 says. It makes crystal clear that the real relevant question is whether Section 1782 aid is required, and when the party to the foreign litigation is in possession of those documents, then that is a quintessential example of when you don't need such aid, and even though . . . How do we have the record that those documents are indeed located with Porsche? Well, to start with, petitioners in the German litigation actually made the request to the higher regional court of a vast bulk of the same documents. They asked for the prosecutor's files. They also asked for a lot of documents with respect to the option strategy at issue, as well as financing issues. So my opponent here talks about how that's a disputed issue, but they themselves asked for discovery, and I'm not going to quibble with whether this is called discovery because nobody is saying that there is U.S.-style discovery in Germany, but the record is clear that the German plaintiffs did ask for that discovery. The fact that they asked for them is evidence that, in fact, those documents are there? The fact that they believed that they could get them. So what Mr. Stone . . . It's not them, is it? I mean, I realize the judge didn't get to the issue of burden among the Intel Factors, but the requests here are pretty dramatically sweeping, and they concern documents that Merrill Lynch . . . whatever Merrill Lynch has in its files that are in any way related to this may be comparable documents, or copies of some of the documents would be in Portia's possession or the possession of somebody else. But what they're asking for, almost by definition, involves the other side of these conversations or internal deliberations at Merrill Lynch or all kinds of things that might be relevant that there's no particular reason to think Portia would have. Now, that doesn't mean that it's somehow important to get all of that or that there isn't enough that is available in Germany that this is a kind of burdensome, unnecessary request, but it just strikes me as, just looking on the face of what they're asking for, they're asking for stuff from Merrill Lynch. This goes back to the question you raised earlier, Your Honor, and that is there's no evidence in the record. In fact, there is contrary evidence in the record that the Merrill Lynch respondents whom Judge Cote assumed were located in New York had no involvement in the claims and issues and the option strategy at issue in the German litigation. So that's point one. And, in fact, they even do use the meeting with Mr. Thain. Yes, Your Honor. But even in their own submission in the German litigation, they did reference that October 15 meeting with Mr. Thain, but no mention of any involvement of the U.S. entity. In fact, instead, what they did in the German litigation is that they referenced Merrill Lynch entities in Frankfurt and London, consistent with testimony that was provided in connection with the criminal proceedings. So they rely on the very same witness who testified that the Merrill Lynch entity involved in the mergers and acquisitions advice were located in Frankfurt or to the extent financing was involved, London. And I just — I know my time is up, but I just want to make one more point with respect to the document request. Your Honor, yes, there are a lot of sweeping discovery requests, but many of those requests also relate to communications involving PORSHA. If you go through it, it's very lengthy. They'll say communications with PORSHA and X, Y, and Z. So this goes back to the point that I was making earlier that I think Judge Cote correctly found, and that under Intel Factor I, the fact that PORSHA S.E. is a litigant in the actual German action would have enabled, had the higher regional court so deemed it, to go ahead and order that. And Mr. Stone said that there's dispute as to whether the higher regional court made an adverse ruling. We can quibble with what you want to call it, but the record is clear that the German plaintiffs filed over 70 recusal motions of the various judges who made decisions. If this was not an adverse ruling, why would they have filed so many recusal motions in an attempt to get rid of the panel that had made that preliminary ruling? We'll hear from Ms. Buchwald. Good morning, Your Honors. Lara Samet Buchwald of Davis Polk & Wardwell on behalf of the Merrill Lynch respondents. Briefly, and I think it became clear through the questioning before, that the question from our perspective is whether it was an abuse of discretion for the district court to consider what the true targets of the documents were and where they resided. And so first . . . Do documents really reside? I mean, there's no such thing as documents anymore, is there? There's digital data, and the real question is, who can access it from where? Correct. There is digital data. There's also hard copy documents that do, in fact, reside somewhere. But . . . When you do the search, you're not going to limit yourself to the hard copy documents because they exist by happenstance. What you really want is the digital data that results in the hard copy. Correct. But this gets to Judge Loewe's question from before about the veil piercing slash corporate separateness issue. And what the question was is, who were the appropriate targets of this petition? And we came in and said, essentially, Your Honor, if you look at who provided services to Portia, it was an entity in Ireland with a Frankfurt branch, it was an entity in the U.K., and it was an entity in the Dutch Antilles. But that doesn't address the question of whether somebody in Ireland or the U.K. has a superior ability to hit a button and call up the data as opposed to somebody in New York. Right. Well, so the two cases that address this corporate separateness issue squarely, one is in the Seventh Circuit, one is a summary order in this circuit. The one in the Seventh Circuit . . . Your answer is, we have no precedent. Well, the answer is, there is a summary order, which obviously is not precedential, but it deals with this. There's also the Saria decision. I'm not the only one who thinks this, but I happen to think that it is outrageous for a court to say, we decide something, but we're perfectly free to decide the other way the next day on the exact same facts. So there are at least some of us who pay attention to the decisions that we make that we think are so obvious that they don't need a precedential opinion and don't think that that means it's gone down the memory hole and we should ignore it. So maybe the bar should be aware that not everybody takes us quite so literally and that we don't take ourselves so literally either, because you'll find many cases in which we wind up citing the things that we think are not precedential. And as I used to say when I was a district court judge, I know they don't want me to cite these things, but gee, I think the opinion of a distinguished panel of the Second Circuit is actually worth a little more than a freely citable law review note by a second year law student. Fair enough. And if I may, do not wade into this long-term debate. I'm going to stay eminently diplomatic. But if I may wade in for two minutes into the FUHR decision, which is the one that I'm referring to, F-U-H-R from 2015, there the district court was faced with a petition that a Deutsche Bank U.S. entity. And then if you looked at what the true documents that were being requested, they were resident with a Deutsche Bank Swiss entity. And the district court denied the petition, concluding that that was improper. And the circuit affirmed. Isn't there a distinction that we should be making here? The question is, are the mandatory factors met? It seems to me it's quite appropriate to say, well, if we've got jurisdiction over an entity that can push the button, that's sort of good enough. They can get these records. So we're past that. But when there's a question of discretion being exercised, isn't the real question, is this a case where the United States is, I wouldn't say obligated, but it's in the interest of the United States to provide litigation support to litigation going on in another country when really even the litigation support is perhaps best sought in still a third country? That if the United States, because it's the headquarters of various globalized corporations, is going to be in the business of being solicited for documents all the time, extensive discovery using American procedures, American courts, when the real entities that were involved in these transactions were all foreign. I should think that's a factor the United States could consider, the United States court could consider in its discretion in deciding whether this is really what 1782 is supposed to do. That's correct. And let me be very clear. There is not a single case that says that a district court cannot consider this in their discretion. There's certainly a split with respect to whether it's mandatory, but even the cases that petitioners cite to say that this was inappropriate, many of them actually say these factors can be the location, the true target can be considered in the discretion of the district court. And that gets, I think, to the twin aims which are referenced repeatedly in the case law and to what you were saying, Judge Lynch, with respect to efficiency and cooperation. In other words, by piercing the corporate veil or by reaching across affiliates, are you doing anything that's either consistent with pursuing efficiency or fostering international cooperation? With respect to efficiency, it's obviously quite overbroad. You're encouraging or you're seeking to require an entity in the U.S. to go fetch documents from their affiliates wherever located. And with respect to cooperation- So, but if Judge Kogan, or at least the question, is correctly directed, then what's the loss in efficiency? I mean, we're all dealing with these databases and New York, presumably, Merrill Lynch, New York has got access to the database worldwide. Well, there's A, no evidence in the record that that is true. But B, the bigger issue is, is there a responsibility for a parent or an affiliate to go fetch documents from its affiliates wherever they reside? And under 1782, there is no such obligation. Even if you were looking under the federal rules, they would have a burden of making a showing and they did not. So in any event, what I would respectfully direct your honors to is the Kestrel-Cole decision from the Seventh Circuit, where they dealt with this question in detail and in fact said, among other things, 1782 neither requires nor encourages district courts to essentially disavow corporate formalities by requiring an affiliate to go pursue documents from another affiliate. Can I ask a somewhat broader question? Sure. How we are to assess the district court's discretion here. It strikes me that it's exceedingly rare that this court finds an abuse of discretion in discovery decisions made by district courts in a domestic case. And yet, when we have these 1782 cases, we seem to scrutinize the district court. Maybe we wind up affirming whatever the district court does most of the time anyway. But there's a lot more focused scrutiny on the decision. And I'm wondering, I mean, is that like right that we do that because one reason why we the district court is closer to the facts, the district courts know much better what's going on in the case than we do where here, nobody knows what's going on in the case. Is it appropriate because this involves foreign relations and Congress's decision that we should be helpful wherever possible to the foreign courts, or should we be even more I'll be interested in Mr. Stone's view on this too. We wind up with things like, well, there's a factual record that could be in dispute about lots of these things, and we wind up with issues where it's not even our business in some sense, and yet district courts might be asked to have factual hearings that they really reside, and what the technology is, and who has control, and should we pierce the veil, and all these kinds of difficult facts. So do you have a take on that as far as your position on is this a case where we should be at least as deferential to the district court as we would be if this were a domestic discovery dispute, or should we be more deferential or less deferential than we normally are? What I would say is that your standard degree of deference is appropriate, and at least appropriate. The reason for that goes right back to the statute. The statute uses the permissive word may over and over and over again. The Supreme Court in Intel says that this court's decisions on 1782 often focus on the discretionary exercise that is involved in reviewing a petition, and for good reason. The court is considering not only what happened in a proceeding abroad, which is perfectly appropriate and permissible under Intel. The court is also considering the scope of the application and what's there. The court's also considering good faith, which is effectively the third Intel factor. And so, for example, here at the preliminary conference when we raised the issue that they had the wrong entities, the district court directly asked petitioner's counsel why they named these respondents. And the answer was, well, these are the major Merrill Lynch entities. And then trying to unpack that, petitioner's counsel said, well, we have no real reason other than they're big and we think that they'll be the custodian of lots of documents from lots of entities, which is suffice it to say that the district court is entitled to consider the nature of the application itself, the nature of the underlying litigation abroad or the underlying proceeding abroad, and it's entitled to consider all of the facts placed before it and is in the best place to do so. Thank you. Thank you. Mr. Stone. Addressing first Your Honor's question, Judge Lynch, I think that the discretion is a little bit less deferential than the review of ordinary discovery disputes. And that's because the statute, as the Second Circuit has repeatedly suggested, the review of the cases that come up from the district courts should also take note of the so-called twin aims of the statute, that we should be providing efficient assistance to litigants in foreign proceedings and that we should be providing an example to foreign countries of the beauty of our system. And those elements are really not present in the lower court's decision here. There was reference to them at the beginning of the judge's discussion of the decision, but there really is no reference to why those are being served and, in fact, we think they were being hampered in this case, that this is actually a pretty textbook case in which discovery should have been allowed. Now, there are more things to respond to than I have time, but I just wanted to get to a few things. First, the references to the German plaintiffs having requested these same elements of discovery in Germany, there's no clear record on this at all. What is clear and what both sides of the dispute from Germany agree is that in Germany they really don't have discovery. If you want a particular document, it rests entirely in the discretion of the judge, which may be exercised for a wide variety of reasons, and you have to specify the date, the to and the from. There's no categorical reaching for documents that takes place in Germany. And so there's no record on what was requested in Germany and it's certainly not a clear record. Now, it's also suggested repeatedly by both counsel that Merrill Lynch and New York had no involvement. Well, we know that that's not completely true because we know there was a big powwow in the middle of the global financial crisis where the CFO of Porsche was summoned to New York to meet with Mr. Thain. That alone tells me Mr. Thain was briefed about this, there were emails and there was an agenda item, and the connections between Merrill Lynch entities and Porsche were so substantial that probably the whole umbrella had to be presented to Mr. Thain in advance of their big powwow. That would suggest to me there are documents in New York. Now, we have a good faith belief that the New York entities that we want to serve subpoenas on have responsive documents. We currently have absolutely no record that that's untrue. And on that basis alone, I think it is inappropriate for the- Is it right, Ms. Buchwald described your response, I want to let you characterize your response to the question why Merrill Lynch in New York and she said, well, those are the big Merrill Lynch entities and there's really nothing more by way of a response. Was that correct? No, I don't think that is correct. I think that those entities, while they are sort of higher up in the hierarchy, they're not just names. Those are, in fact, entities with people who were involved with Porsche. That's our belief. We've heard nothing to the contrary. And so we've never disputed that the investment bankers were primarily involved in New York, but we don't know, in London, I apologize, but there's no evidence that there was nobody from New York involved. What we do know is that Merrill's counsel here for the New York entities was able to that she was able to describe in a declaration, but they refused to furnish to us. So we don't even know, there's a mystery even about the engagement letters, but there's ready access that the Merrill Lynch New York entities have to alleged engagement letters of foreign entities. And yet there's no availability of these documents for us to be able to find out what's in those engagement letters. May I just take you back to something you said a few moments ago that, what everyone of course agrees, that there is nothing like our discovery in Germany. It strikes me that there's a certain tension in our case law about the relevance of that to this kind of decision. Your adversaries cite the Kiebel decision from this court as possibly suggesting what might seem to me to be almost something as broad as, well, that means you can never get 1782 discovery in a German case because that's always going to be an evasion of limitations on the truth-seeking process that exists in the other country. We also have the Mies case from this court, which seems to say something else that's a narrower view of what that, is that the third Kiebel factor is about? How should we resolve that tension? I mean, or is there a tension? Do you think that Kiebel is any kind of problem for you? No, I don't. I think Kiebel is a case that I put into a category of the lawyer's case. It's like the In re Schmitz case in which documents were sought from a law firm. Just like in Kiebel, the documents were sought from Kravath, who received the documents- A quasi-privileged case, is how you- Right. And I think that there are a number of cases that can fit into that category. I think the concern with some of the language in Kiebel, we addressed the language in our reply brief, is allayed when we take a closer look at Kiebel. There were protective orders in place. There were orders in the Dutch court that, or I think it was the Dutch court. There were orders in the foreign court that expressly addressed the availability of these documents. And it was really a workaround to try to get party documents. We don't have that going on in this case. I don't know if that addressed- It does. Thank you, counsel. Thank you. Thank you very much. I thank the court.